IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DUKE F CRANFORD,

    Plaintiff,

v.                                                       CASE NO. 1:09-cv-00070-MP-AK

A D HAMMOCK, R B HANSHEW,
et al,

    Defendants.

_____/

**O R D E R**

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that Defendants violated his constitutional rights with regard to several religious practices. (Doc. 16). Defendant McNeil has moved to dismiss the complaint (doc. 36), to which Plaintiff has responded. (Doc. 41). Defendants Hammock and Hanshew have moved for summary judgment (doc. 46), to which Plaintiff has responded. (Doc. 49 and 51). For the reasons which follow, the Defendants' motions are granted and this case dismissed.

**I.    Allegations of the Amended Complaint (doc. 16)**

Plaintiff is a Muslim. He claims that attendance at Jumah services on Friday evenings is a central tenet of the Muslim faith. Plaintiff further claims that Defendant Chaplain Hammock cancelled Jumah services on May 30, 2008, after he and other Muslims had arrived at the chapel. Plaintiff then claims that when he grieved this issue, Senior Chaplain Hanshew retaliated against him by discontinuing Taleem study classes,[1] that he ceased to provide chapel space for day

---

[1] According to Defendants, citing the FDOC Religion Technical Guide for Selected Religious Groups, Taleem sessions are not religious services, but are study groups for Islamic

prayers, and limited Jumah services to one hour. Although Defendant Hanshew explained during the grievance process that changes in the chapel schedule were due to a lack of staffing, Plaintiff contends that Hanshew told him and other Muslims that he was going to play "hard ball" with them for filing grievances concerning the May 30th incident. Plaintiff contends that despite Hanshew's claims that the schedule could no longer accommodate the Muslim Taleem classes and extended Jumah services, these time slots were filled by Christian study groups.

Plaintiff alleges that Defendant McNeil knew of the denial of Jumah services and retaliatory actions by Defendant Hanshew, but he refused to investigate or otherwise correct these constitutional violations.

Plaintiff seeks as injunctive relief a number of corrective actions concerning treatment of Muslims in the correctional system, compensatory and punitive damages.

## II. McNeil's Motion to Dismiss [2]

Defendant McNeil, Secretary of the Florida DOC, has moved to dismiss Plaintiff's claims against him for failure to exhaust administrative remedies and for failure to state a claim.

### A) Exhaustion

The Supreme Court has upheld the law of the Eleventh Circuit and reaffirmed that the exhaustion requirement of the Prisoner Litigation Reform Act (PLRA) is mandatory and necessary. Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006). In Woodford, the Supreme Court referred to exhaustion as the "centerpiece" of the PLRA, and cited with approval the Eleventh

---

beliefs, culture and history and may be accomplished by the use of videos, books, or individual study. (Doc. 46, p. 21).

[2] It was unnecessary to consider the materials submitted with the motion to dismiss in deciding the motion so it was not treated as one for summary judgment.

Circuit's position that exhaustion is a mandatory provision, no longer left to the discretion of the district court, and that a prisoner must complete the process as the institution requires, including appeals. Id., at 2384. The Florida Department of Corrections provides a three-step grievance procedure. In most situations, an inmate must first file an informal and then a formal grievance at the institution level, and then he must file an appeal to the Office of the Secretary of the FDOC.

Defendant McNeil contends that no grievances were filed against him on this claim and the Court has reviewed the grievances Plaintiff submitted with the amended complaint as proof of exhaustion and none of them concern Defendant McNeil or allegations that McNeil failed to investigate or correct the actions by Defendants Hammock and Hanshew. Thus, Plaintiff has indeed failed to exhaust administrative remedies with regard to his claims against Defendant McNeil.

  B) Failure to state a claim

Federal courts which have addressed the issue of whether defendants may be held liable for their participation or lack thereof in the grievance process have held that inmates are not constitutionally entitled to a grievance procedure, and therefore, the state creation of such a procedure does not give rise to a substantive constitutional right, particularly a liberty interest under the Due Process Clause. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied* 514 U.S. 1022, 115 S. Ct. 1371, 131 L. Ed. 2d 227 (1995); Smith v. Corrections Corporation of America, 19 Fed. Appx. 318, 321 (6th Cir. 2001); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied* 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 213 (1988). Liability, therefore, cannot be predicated upon a claim that the defendants failed to investigate a grievance

or respond in a particular manner, Baker v. Rexroad, 159 Fed.Appx. 61, 62 (11th Cir. 2005), or failed to process them effectively, LaFlame v. Montgomery County Sheriff's Department, 3 Fed. Appx. 346, 347 (6th Cir. 2001), or failed to process them timely, Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982). *See also* Massey v. Helman, 259 F.3d 641 (7th Cir. 2001) (failure to provide grievance forms not a cognizable claim); Allen v. Wood, 970 F. Supp. 824, 832 (E.D. Wash. 1997) (improper processing not cognizable); Ainsworth v. Terhune, 2002 WL 1837806 (N.D. Cal.) (inordinate delay not a claim). Consequently, insofar as Plaintiff claims that Defendant McNeil failed to investigate and correct the allegations raised in his grievances, he has failed to state a claim for relief and the claim should be dismissed.

### III.     Motion for Summary Judgment (doc. 46)

####      A.     Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cir. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

    B.    Defendants' Relevant Rule 56(e) evidence

        1)    Affidavit of Defendant Royce Hanshew (doc. 46, exhibit B)

Defendant Hanshew is Senior Chaplain at Cross City CI and has been so for nearly 12 years. He attests that on May 30, 2008, the yard at Cross City was closed because maintenance was being performed and traffic was coming on and off the compound. For security reasons, when the yard is closed all religious groups are denied access to the chapel, such that on May 30,

2008, all religious services, not just Jumah services, were canceled. Following this incident, Defendant Hammock's position was cut because of budget restraints and changes had to be made to the chapel schedule until additional staff could assist Hanshew, who was working seven days a week over 40 hours a week without compensation to accommodate all the religious group needs. Taleem was cut, among several other activities, because it could be undertaken individually and with materials available to general population from the library. The video room was closed to inmates for congregational prayer because of limited staff assistance, but there were no limitations on Muslims or any other religious groups meeting for group prayer in their dorms. Defendant Hanshew never stated that he would play hard ball with the inmates and did not retaliate against anyone, even though he believed that the May 30th incident was being blown out of proportion.

    2)  <u>Affidavit of Daniel Bannister (doc. 46, exhibit C)</u>

Bannister is Chief of Security at Cross City and attests that when vehicle traffic is on the yard only inmates with medical call outs may move from building to building because of the high security risk, particularly the risk that a group of inmates could overpower their escorts and commandeer a vehicle. On May 30, 2008, there were dump trucks, a back hoe and a bucket truck on the yard.

    3)  <u>Affidavit of Alan Hammock (doc. 46, exhibit D)</u>

Defendant was a Chaplain at Cross City on May 30, 2008, and recalls that the yard was closed that day because maintenance was being performed and vehicles were on the compound. He asked if he could have his clerks come to the chapel to do some work and was told that they could come, but all other religious call-outs were canceled, and he would have to lock the chapel doors after his clerks entered. He opened the doors and saw all the inmates coming and waved

his arms at Sgt. Collins to get his attention that only the clerks were allowed to come to chapel. There was a simple miscommunication, but the inmates were all returned to their dormitories where they could have their prayer service either individually or together in the day room.

       4)       <u>Affidavit of Ronnie Collins (doc. 46, exhibit E)</u>

Collins recalls, although not clearly as to the date, that Muslim inmates were mistakenly brought to chapel and returned to their dormitories after a misunderstanding.

       5)       <u>Chapel Calendar (doc. 46, exhibit I)</u>

In April 2008, the calendar shows Jumah Prayer at 2:00 on Fridays and Taleem at 1:30 on Saturdays and 2:15 on Sundays. In May 2008, the calendar was the same except that there was no Taleem on Saturday. In June 2008, all the Muslim services and study groups are shown at the same times as the previous month, but the Native American services were switched to Thursdays and only one movie day a week was scheduled when previously there had been two movie nights. In July 2008, Taleem was no longer scheduled, but Jumah remained on the calendar for 2:00 on Friday. In August 2008, the calendar changed again in a number of unrelated respects, but Jumah remained on the calendar for 2:00 on Fridays. In September Ramadan was added every day at 4:00.p.m.(which Plaintiff attended, <u>see</u> Exhibit K) and in October Taleem was added back on Sunday afternoon.

       6)       <u>Affidavit of German Rivera (doc. 46, exhibit O)</u>

Rivera was a volunteer chaplain at Cross City and knew personally that Defendants Hanshew and Hammock were fair to all religious groups. After Hammock's position terminated, Rivera volunteered two days a week to help out, but the chapel schedule had to be changed in late June 2008.

C.    Plaintiff's Response (docs. 49 and 51[3])

Affidavit of Duke Cranford (doc. 49, exhibit A)

Plaintiff complains that if he had been afforded sufficient discovery he would show that all the facts he alleges would be true and that there was no security issue on May 30, 2008, the compound was on "close" movement status because of bad weather, which had cleared when he and other Muslim inmates were escorted to chapel. He claims that because "security" escorted him and the others, there could be no security issue preventing him from attending chapel, and Defendant Hammock denied him entrance for his own reasons and lied about the conversation he had with Collins where Plaintiff overheard him say that he was making the call, not security, about Jumah services that day.

**IV.    Analysis**

A.    Failure to show substantial burden

Plaintiff bases his claims of denial of free exercise of his Muslim faith on the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc(a)(1). Both of these bases for relief require as a preliminary finding that there has been a substantial burden or infringement upon the religious practice before an inquiry is made into whether the infringement was reasonably related to a legitimate penological interest. See O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987); Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995). "Substantial burden" has been defined as one that either compels the person to engage in conduct that his religion forbids or forbids him from engaging in conduct that his religion requires. *Id.* at 1522. This burden must be more than

---

[3] Document 51 is the same as document 49 and will not be addressed separately.

*Case No: 1:09-cv-00070-MP-AK*

inconsequential. Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir.2002). The religious practice allegedly burdened must be "some central tenet of a [person's] individual beliefs, Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995), or an "essential" or "fundamental" practice. Abdur-Rahman v. Michigan Dept. Of Corrections, 65 F.3d 489, 491-92 (6th Cir. 1995).

In the context of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc(a)(1), "substantial burden" has been found when a regulation has "a tendency to coerce individuals into acting contrary to their religious beliefs," Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988), or when government puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141 (1987). Only if Plaintiff demonstrates a substantial burden on his practice, is it necessary to apply the reasonableness test to determine if the DOC's actions were reasonably related to a legitimate penological interest. Wilson v. Moore, 270 F. Supp. 2d 1328,1349 (N.D. Fla. 2003). See also Midrash Sephardi Inc. v. Town of Surfside, 366 F.3d 1214, 1225 (11th Cir. 2004) (Plaintiff bears burden of showing substantial burden on religious practice before invoking protections of RLUIPA). If Plaintiff fails to provide evidence that a particular practice is essential to his faith that its absence would be a substantial burden to the exercise of his religion, then he has failed to show that its denial violated the First Amendment and summary judgment should be granted in Defendant's favor. *Id.* at 1350.

Applying this law to the facts at hand, the Court is of the opinion that Plaintiff has failed to show that the actions of Chaplains Hammock or Hanshew, even taking Plaintiff's allegations as true, posed a substantial burden on his religious practice.

Plaintiff's primary complaint concerns one Jumah service on May 30, 2008. Jumah is a

special noon service that all adult, male Muslims are obliged to attend.[4]  Plaintiff alleges that he missed one service and other services were limited from 2 hours to 1 hour, although the calendar does not reflect this change, and research conducted by the Court indicates that the time frame for Jumah depends on the length of an accompanying sermon which may cause the service to extend beyond one hour.[5]  Plaintiff generally complains that the video room was closed to him for group prayer, but he provides no facts either showing that group prayer at times other than Jumah is a central tenet of his religion or how long he was denied this practice in the video room. Neither does Plaintiff address Defendant's contention that he could have group prayer in his dorm room.  He complains generally that Taleem study was denied him following the May 30th incident, but again he provides no facts to support that this practice was a central tenet of his religion, that he could not conduct these studies otherwise, or how long he was denied this practice.  According to the proof provided by Defendants, the calendar shows that Jumah Prayer remained scheduled for 2:00 on Fridays, but Taleem was cut from the calendar in July and then rescheduled for one day, not two, in September.  Although Plaintiff complains that he was not allowed to conduct discovery, particularly to obtain the affidavits of other inmates, discovery was unnecessary for him to explain in his own affidavit why these practices were crucial to Muslim practice or when and how these practices were discontinued.  Further, Plaintiff was given three months for discovery (see doc. 44) and served discovery requests to which he received responses with the exception of three requests which Defendants objected to on grounds of relevancy and security.  (See Doc. 57).  The Court agreed with the objections.  (Doc. 59).

---

[4] See, Jumah, Encyclopedia Britannica Online, http://www.britannica.com/EBchecked/topic/308043/jumah.

[5] See http://www.howcast.com/videos/217206-How-To-Attend-a-Muslim-Friday-Prayer-Service-Jumah.

*Case No: 1:09-cv-00070-MP-AK*

Nearly a month after the close of discovery and after Plaintiff had filed responses to the pending motions, he moved to correspond with 15 inmates (doc. 60), but failed to address with the Court either his untimeliness or the necessity of the correspondence and the motion was denied. (Doc. 61).

Thus, the Court finds that Plaintiff has failed to show that the actions of Defendants substantially burdened the practice of his faith.

B. Reasonableness test

Even if Plaintiff had carried his burden of showing a substantial burden upon the practice of his faith, his claim would also fail because the Defendants have clearly shown the reasonableness of their actions. While prisoners retain the First Amendment right of free exercise of religion, regulations or policies "alleged to infringe constitutional rights [in prison] are judged under a 'reasonableness' test." O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987). The Supreme Court in O'Lone directs courts to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prison. *Id.* The standard of review requires that challenged prison regulations be upheld if they are "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 350, *utilizing the standard of* Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

Thus, to find a free exercise violation in the prison context, a plaintiff must demonstrate that prison officials have employed a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which burdens a practice of his religion or prevents him from engaging in conduct or having a religious experience which the faith mandates. Under the RLUIPA, a prima facie case is established by demonstrating that a policy

or practice constitutes a substantial burden on a plaintiff's religious exercise and the burden then shifts to the defendant to show that any substantial burden is "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§2000cc-1(a) and 2000cc-2(b).

Loosely construing Plaintiff's claims to state a "policy," i.e. closing the chapel to religious services when there are vehicles on the compound for maintenance, Defendants have provided clear, logical and reasonable security interests in restricting inmate movement on the yard to only medical call-outs. It would be a serious security risk to allow groups of inmates to travel around large trucks or other vehicles that are coming and going and could obscure that travel or allow for the commandeering of a vehicle, particularly heavy machinery such as dump trucks and backhoes. Plaintiff has offered no reason why Defendant Hammock would otherwise cancel the services, he was Chaplain and it was his job to provide religious services to inmates, and Plaintiff's conclusory summation that Defendant Hammock discriminated against Muslims is supported by no facts. Thus, even were the Court to find that Plaintiff carried his burden in showing a substantial burden, which it does not, Defendants have carried theirs by articulating a reasonable penological interest in restricting inmate movement during high traffic times in the yard even if it resulted in the cancellation of religious services for that day.

C.  Retaliation[6]

A claim that a plaintiff was penalized for the exercise of a specific constitutional right is properly considered under the First Amendment. See Thaddeus-X v. Blatter, 175 F.3d 378, 387

---

[6] Plaintiff asserts a claim under the Eighth Amendment in the context of his retaliation claim against Hanshew (doc. 16, p. 19), alleging that Hanshew's actions were cruel and unusual. However, this claim is properly asserted as a First Amendment claim since it concerns retaliation in the context of a First Amendment right (filing grievances).

(6th Cir. 1999) (en banc). It is well settled law that the First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. Green v. Mowery, 212 Fed. Appx. 918, 919 (11th Cir. 2006); Redd v. Conway, 160 Fed. Appx. 858, 862 (11th Cir. 2005). To state a retaliation claim, a plaintiff must establish three elements: (1) that his speech or act was constitutionally protected; (2) that the defendants' retaliatory conduct adversely affected the protected speech or act; and (3) that there is a causal connection between the retaliatory actions and the adverse affect. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The Eleventh Circuit has adopted an objective test as the standard for determining whether there has been an adverse affect.[7] Id., at 1251. Under this analysis "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Id., at 1250, *quoting* Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005). This test is applicable to prisoners' claims of retaliation as well. Bennett, *supra* at 1253, n.6.

 A plaintiff bears the burden of proof on all three elements.

 Plaintiff has carried his burden as to the first element, he clearly has a First Amendment right to file grievances. See Green, *supra* and Redd, *supra*. However, as to the second Bennett requirement, Plaintiff must show that the Defendants' conduct resulted in something more than a "de minimis inconvenience" to the exercise of his First Amendment rights. Bethel v. Town of Loxley, 221 Fed. Appx. 812, 813 (11th Cir. 2006). Negative statements in general made by a defendant without threat of physical violence or any other consequence would not likely deter a

---

[7] A minority of circuits apply a subjective test under which the Plaintiffs have to show that they were actually chilled in the exercise of their First Amendment rights, but the Eleventh Circuit specifically declined to adopt this standard in favor of the majority view. Bennett, *supra* at 1251.

person of "ordinary firmness" from exercising his rights. Wood v. Valentino, 2007 WL 1427045 (M.D. Fla. 2007). However, a threat of "something drastic" if a prisoner did not stop filing grievances said by someone in a position of significant authority is sufficient to deter a person of ordinary firmness from filing grievances. Pittman v. Tucker, 213 Fed. Appx. 867, 871 (M.D. Fla. 2007).

Plaintiff alleges that Defendant Hanshew told him and others that Hanshew was going to "play hard ball," and then Hanshew cancelled Taleem study, closed the video room, and limited Jumah to one hour rather than two hours. As an initial matter, whatever Defendant Hanshew did or said did not in actuality deter Plaintiff from filing grievances. (See Doc. 16, Exhibits A through J). He filed grievances from June 3, 2008, right after the incident, through January 13, 2009. Further, the calendar shows that several other religions were affected by scheduling changes which did not include the cancellation of Jumah services or Ramadan which was allowed daily observance through the month of September 2008 in the midst of Plaintiff's grievance process.

Further, as to the third requirement, a causal link, conclusory allegations of retaliation without "some facts" that would indicate that the retaliatory act (cancelling religious services) was in retaliation for filing grievances is not sufficient. See White v. Thompson, 2007 WL 2324613 (S. D. Ga. 2007). See also Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (prisoner may establish retaliation by "demonstrating that the prison official's actions were `the result of his having filed a grievance concerning the conditions of his imprisonment.'"). The allegations must be more than "general attacks" upon a defendant's motivations, Plaintiff must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600,

118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted). A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right. Adams v. James, 784 F.2d 1077, 1082 (11th Cir. 1986); Adams v. James, 797 F.Supp. 940, 949 (M.D. Fla. 1992). Even though prison officials do not have the authority to prohibit inmates from filing grievances it does not follow that every time an inmate files a grievance the act of doing so renders the exercise of prison authority suspect. See Adams, 784 F.2d at 1082. Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof, see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

     Under the present facts, three persons (Defendants Hammock and Hanshew and volunteer Rivera) have attested that following the May 30th incident Hammock's position was terminated and it was difficult for Hanshew to maintain all the religious services without some cancellation of services and events and scheduling shifts. The calendars reflect that a number of religions were affected, but the Jumah service was not cancelled or cut short (according to the calendar) and despite the staffing problem Ramadan was accommodated. The Taleem study sessions were cut, but they were resumed in September 2008. Often, a prisoner may show a causal connection between the first amendment exercise and the retaliation by alleging "a

*Case No: 1:09-cv-00070-MP-AK*

chronology of events that creates a plausible inference of retaliation." O'Bryant v. Finch, 2008 WL 691689 (N. D. Fla.), *citing* Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988). The temporal proximity of retaliatory behavior to the filing of a grievance may serve as circumstantial evidence of retaliation. Id., *citing* Gayle v. Gonyea, 313 F.3d 677, 683-84 (2nd Cir. 2002). However, in the present case Defendant Hanshew never entirely cut Muslim services, shifted and canceled other services during a time period when he was short staffed, and in fact began increasing Muslim activities, including Ramadan daily, during the grievance process he was allegedly trying to stop. Such a time line does not support a causal link between the First Amendment activity and Defendant Hanshew's alleged retaliation.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. Defendant McNeil's Motion to Dismiss (doc. 36) is GRANTED.

2. Defendants Hammock and Hanshew's Motion for Summary Judgment (doc. 46) is GRANTED.

3. This cause is DISMISSED with judgment to be entered in Defendants' favor.

**DONE AND ORDERED** this _11th_ day of March, 2010

          *s/Maurice M. Paul*
          Maurice M. Paul, Senior District Judge